**NIN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CHRISTIAN DIOR COUTURE, S.A.,<br><br>Plaintiff,<br><br>v.<br><br>JINTINGSTORE, et al.,<br><br>Defendants. | Case No. 26-cv-04692<br><br>**Judge Manish S. Shah**<br><br>**Magistrate Judge Maria Valdez** |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR ENTRY OF DEFAULT AND DEFAULT JUDGMENT AS TO ALL REMAINING DEFENDANTS**

Plaintiff Christian Dior Couture, S.A. ("Plaintiff" or "Dior") submits the following memorandum in support of its Motion for Entry of Default and Default Judgment under Fed. R. Civ. P. 55 against all Defendants remaining in this case[1] (collectively, the "Defaulting Defendants"), based on Plaintiff's action for trademark infringement, counterfeiting, and false designation of origin.

**STATEMENT OF FACTS**

Plaintiff is the owner of numerous trademarks (collectively, the "CHRISTIAN DIOR Trademarks"). Complaint [1] at ¶¶ 7-8. Defaulting Defendants are individuals and business entities of unknown makeup who, either individually or jointly, own and/or operate one or more of the e-commerce stores under at least the seller aliases identified on Schedule A (collectively, the "Seller Aliases"). *Id.* at ¶¶ 13-14; **Exhibits 1 and 2**. Each Defaulting Defendant targets sales to Illinois residents by setting up and operating e-commerce stores that target U.S. consumers using

[1] "Defaulting Defendants" as used herein includes all Defendants listed on Schedule A attached as **Exhibit 1** that have not been noted as "DISMISSED." The Schedule A attached as **Exhibit 1** is also attached to Plaintiff's proposed Final Judgment Order. Attached as **Exhibit 2** is screenshot evidence for Defaulting Defendants which was previously submitted at Docket Nos. [3] and [18].

one or more Seller Aliases, offer shipping to the U.S., including Illinois, accept payment in U.S. dollars from U.S. consumers, and has offered for sale and sold unauthorized and unlicensed products using infringing and counterfeit versions of the federally registered CHRISTIAN DIOR Trademarks (the "Counterfeit Dior Products") to residents of Illinois. *Id.* at ¶¶ 2, 17, 25-26. Additional factual assertions regarding Defaulting Defendants in Paragraphs 13-26 of the Complaint are incorporated herein. *Id.* at ¶¶ 13-26.

Plaintiff filed this action on April 24, 2026. [1]. On May 5, 2026, this Court granted Plaintiff's *Ex Parte* Motion for Entry of a Temporary Restraining Order (the "TRO") [25], that was converted to a Preliminary Injunction. [42]. Paragraph 6 of the TRO permitted Plaintiff to complete service of process as to Defendants by electronically publishing a link to the Complaint, the TRO, and other relevant documents on a website and sending an e-mail with an attachment of the relevant documents and a link to said website to an e-mail address for each Defendant. [25] at ¶ 6. Defaulting Defendants were properly served on May 28, 2026. [38]. None of the Defaulting Defendants have filed an answer or otherwise pled in this action. *See* Declaration of Justin R. Gaudio (the "Gaudio Declaration") at ¶ 2.

Pursuant to Federal Rule of Civil Procedure 55(a) and (b)(2), Plaintiff now moves this Honorable Court for an Order entering default and default judgment finding that Defaulting Defendants are liable on all counts of Plaintiff's Complaint. Fed. R. Civ. P. 55(a) and (b)(2). Plaintiff further seeks an award of statutory damages as authorized by 15 U.S.C. § 1117(c)(2) for willful trademark counterfeiting against each of the Defaulting Defendants for use of counterfeit CHRISTIAN DIOR Trademarks on products sold through each of the e-commerce stores operating

under the Seller Aliases.[2] Plaintiff also seeks entry of a permanent injunction prohibiting Defaulting Defendants from selling Counterfeit Dior Products and an order that all assets in Defaulting Defendants' financial accounts be transferred to Plaintiff.

## ARGUMENT

### I. JURISDICTION AND VENUE ARE PROPER IN THIS COURT

This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defaulting Defendants since each of the Defaulting Defendants directly targets business activities toward consumers in Illinois and causes harm to Plaintiff's business within this Judicial District. *See* [1] at ¶¶ 2, 17, 25-26; *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 423-24 (7th Cir. 2010) (without benefit of an evidentiary hearing, plaintiff bears only the burden of making a *prima facie* case for personal jurisdiction; all of plaintiff's asserted facts should be accepted as true and any factual determinations should be resolved in its favor).

Through at least the fully interactive, e-commerce stores operating under the Seller Aliases, each of the Defaulting Defendants has targeted sales from Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars from U.S. consumers, and has sold Counterfeit Dior Products to residents of Illinois. [1] at ¶¶ 2, 17, 25-26. Personal jurisdiction exists over Defaulting Defendants since they directly target their business

---

[2] Pursuant to 15 U.S.C. § 1117(c), for cases which involve a counterfeit mark, a "plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a), an award of statutory damages . . . ."

activities toward consumers in the United States, including Illinois. Specifically, Defaulting Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive e-commerce stores under the Seller Aliases through which Illinois residents can purchase Counterfeit Dior Products. *Id.*; *see NBA Properties, Inc. v. HANWJH*, 46 F.4th 614, 624-627 (7th Cir. 2022); *see also Monster Energy Co. v. Wensheng*, 136 F. Supp. 3d 897, 906-08 (N.D. Ill. 2015).

## II. PLAINTIFF HAS MET THE REQUIREMENTS FOR ENTRY OF DEFAULT

Pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, "when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Plaintiff filed its Complaint alleging federal trademark infringement and counterfeiting, 15 U.S.C. § 1114 (Count I), and false designation of origin, 15 U.S.C. § 1125(a) (Count II). [1].

Certain countries that Defendants reside in are signatories of the Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil and Commercial Matters ("Hague Convention"), including, but not limited to, China and Hong Kong. [21] at ¶ 4; Declaration of Jennifer V. Nacht ("Nacht Declaration") at ¶ 2. For the reasons provided in the Declaration of Lijia Chen (the "Chen Declaration") and the Nacht Declaration, certain Defaulting Defendants' addresses are unknown, and the Hague Convention does not apply. *See Kangol LLC v. Hangzhou Chuanyue Silk Imp. & Exp. Co.*, 177 F.4th 739, 799 (7th Cir. 2026) (finding that the Hague Convention does not apply if defendant's address is not known pursuant to Article 1 of the Hague Convention); *see also Hallmark Licensing, LLC v. P'ships & Unincorporated Ass'sn Identified in Schedule "A"*, No. 24-cv-00112 (N.D. Ill. Mar. 31, 2025) (Docket Entry No. 70) (Bucklo, J.) (unpublished) ("Plaintiff offered evidence of its reasonably diligent efforts to ascertain defendant's address—including by using the very search engine ("Baidu") that defendants argue

is used in China—and was unable to confirm it."); *see* Nacht Declaration at ¶¶ 9-10; *see* Chen Declaration at ¶¶ 9-10. Accordingly, service by email on these Defaulting Defendants is permissible.

Defendant electronigadget0 (Def. No. 17) has an address in Hong Kong. **Exhibit 2**; Nacht Declaration at ¶ 2. Hong Kong is a party to the Hague Convention but has not objected to Article 10(a) of the Hague Convention. *See Fox Shiver, LLC v. Individuals*, 2023 U.S. Dist. LEXIS 118387, at *5-6 (S.D.N.Y. Apr. 25, 2023) ("Hong Kong, Pakistan, Vietnam, and the United Kingdom, however, have not objected to Article 10 of the Hague Convention or to postal service."). Article 10(a) of the Hague Convention permits service by "postal channels, directly to persons abroad." *Kangol LLC*, 177 F.4th at 801 (quoting Hague Convention, Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638); *see also Trade Well Int'l v. United Cent. Bank*, 825 F.3d 854, 860 (7th Cir. 2016) ("[S]imple certified mail [is] a method permitted by Article 10(a) of the Hague Convention, so long as the foreign country does not object."). Courts have found that "postal channels" encompasses e-mail. *Poseidon Technology Limited v. Joygame Studio Limited*, No. 26-cv-06831 (N.D. Ill. July 1, 2026), ECF Nos. 23-24 (Hunt, J.); *Luxottica Grp. S.p.A. v. P'ships and Unincorporated Ass'ns Identified on Schedule "A,"* 391 F. Supp. 3d 816, 827 (N.D. Ill. 2019). Service by e-mail on Defendant electronigadget0 in a country that does not object to Article 10(a) is, therefore, permissible. *See, e.g.*, *Abercrombie & Fitch Trading Co. v. Quester (US) Enters*., 2025 U.S. Dist. LEXIS 24810, at *7-8 (S.D.N.Y. Feb. 11, 2025) (collecting cases).

Accordingly, Defaulting Defendants were properly served, and none of the Defaulting Defendants have filed an answer or otherwise pled in this action. Gaudio Declaration at ¶ 2. Upon information and belief, the Defaulting Defendants are not active-duty members of the U.S. armed forces. *Id.* at ¶ 3. Accordingly, Plaintiff asks for entry of default against the Defaulting Defendants.

## III. PLAINTIFF HAS MET THE REQUIREMENTS FOR ENTRY OF DEFAULT JUDGMENT

Rule 55(b)(2) of the Federal Rules of Civil Procedure provides for a court-ordered default judgment. A default judgment establishes, as a matter of law, that defendants are liable to plaintiff on each cause of action alleged in the complaint. *United States v. Di Mucci*, 879 F.2d 1488, 1497 (7th Cir. 1989). When the Court determines that a defendant is in default, the factual allegations of the complaint are taken as true and may not be challenged, and the defendants are liable as a matter of law as to each cause of action alleged in the complaint. *Black v. Lane*, 22 F.3d 1395, 1399 (7th Cir. 1994).

The answer deadline has passed and no answer or other responsive pleading has been filed by any of the Defaulting Defendants. *See* Fed. R. Civ. P. 12(a)(1)(A). Accordingly, default judgment is appropriate, and consistent with previous similar cases in front of this Court, Plaintiff requests an award of statutory damages as authorized by 15 U.S.C. § 1117(c)(2) for willful trademark counterfeiting against each of the Defaulting Defendants for use of counterfeit CHRISTIAN DIOR Trademarks on products sold through the e-commerce stores operating under the Seller Aliases. Plaintiff also seeks entry of a permanent injunction prohibiting Defaulting Defendants from selling Counterfeit Dior Products and an order that all assets in Defaulting Defendants' financial accounts be transferred to Plaintiff.

### A. Trademark Infringement, Counterfeiting, and False Designation of Origin

To properly plead a claim of trademark infringement and counterfeiting pursuant to the Lanham Act, a plaintiff must allege that (1) its mark is distinctive enough to be worthy of protection, (2) defendants are not authorized to use the mark; and (3) defendant's use of the mark causes a likelihood of confusion as to the origin or sponsorship of defendant's products. *See Bliss Salon Day Spa v. Bliss World LLC*, 268 F.3d 494, 496-97 (7th Cir. 2001).

Plaintiff alleged in its Complaint that it is the exclusive owner of the CHRISTIAN DIOR Trademarks and that Defaulting Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using infringing and counterfeit reproductions of the CHRISTIAN DIOR Trademarks, that Defaulting Defendants have knowledge of Plaintiff's rights in the CHRISTIAN DIOR Trademarks, that Defaulting Defendants are not authorized to use the CHRISTIAN DIOR Trademarks, and that Defaulting Defendants' use of the CHRISTIAN DIOR Trademarks causes a likelihood of confusion. [1] at ¶¶ 28-30.

Plaintiff also alleged in its Complaint that Defaulting Defendants are using the CHRISTIAN DIOR Trademarks in connection with the sale of Counterfeit Dior Products. *Id.* at ¶¶ 35-36. As such, this creates a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of Defaulting Defendants' Counterfeit Dior Products by Plaintiff. *Id.*

Since the Defaulting Defendants have failed to answer or otherwise plead in this matter, the Court must accept the allegations contained in Plaintiff's Complaint as true. *See* Fed. R. Civ. P. 8(b)(6); *Am. Taxi Dispatch, Inc. v. Am. Metro Taxi & Limo Co.*, 582 F. Supp. 2d 999, 1004 (N.D. Ill. 2008). Accordingly, Plaintiff requests entry of judgment with respect to Counts I and II for willful trademark infringement and counterfeiting of the CHRISTIAN DIOR Trademarks and false designation of origin against the Defaulting Defendants.

## IV. PLAINTIFF IS ENTITLED TO A STATUTORY DAMAGES AWARD

### A. Statutory Damages Are Appropriate in this Case

Pursuant to the statutory damages provision of the Lanham Act, 15 U.S.C. § 1117(c), a plaintiff in a case involving the use of a counterfeit mark may elect to receive "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or

distributed, as the court considers just" 15 U.S.C. § 1117(c)(1). When the counterfeiting is found to be willful, 15 U.S.C. § 1117(c)(2) provides for statutory damages of up to "$2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(2).

The lack of information regarding Defaulting Defendants' sales and profits makes statutory damages particularly appropriate for default cases like the instant case. *Lorillard Tobacco Co.*, 2004 U.S. Dist. LEXIS 22563, at *9 (N.D. Ill. 2004) (citing S. Rep. No. 177, 104th Cong. 1995). Likewise, Courts have recognized that statutory damages should be awarded without requiring an evidentiary hearing. *See Lorillard Tobacco Co. v. Montrose Wholesale Candies & Sundries, Inc.*, 2008 U.S. Dist. LEXIS 31761, at *11 (N.D. Ill. Apr. 17, 2008).

**B. A Statutory Damages Award Is Warranted**

Although 15 U.S.C. § 1117(c) contains the dollar range for possible statutory damage awards, the only guidance provided by the statute for how to determine a damage award within the statutory dollar range is "as the court considers just." 15 U.S.C. § 1117(c). Courts interpreting 15 U.S.C. § 1117(c) have analogized case law applying the statutory damage provision of the Copyright Act contained in 17 U.S.C. § 504(c). *See Lorillard Tobacco Co.*, 2004 U.S. Dist. LEXIS 22563, at *10; *Luxottica USA LLC v. The P'ships, et al.,* 2015 U.S. Dist. LEXIS 78961, at *5 (N.D. Ill. 2015); *Sara Lee v. Bags of New York, Inc.*, 36 F. Supp. 2d 161, 166 (S.D.N.Y. 1999).

The Seventh Circuit's standard for awarding statutory damages for copyright infringement under 17 U.S.C § 504(c) is articulated in *Chi-Boy Music v. Charlie Club*, 930 F.2d 1224, 1229 (7th Cir. 1991). Under the *Chi-Boy* standard, a court awarding statutory damages is "not required to follow any rigid formula," but instead "enjoys wide discretion." *Id.* In computing the award amount, a court may consider factors such as "the difficulty or impossibility of proving actual

damages, the circumstances of the infringement, and the efficacy of the damages as a deterrent." *Id.* Courts in this district have also considered the significant value of a plaintiff's brand and the efforts taken to protect, promote and enhance that brand in determining the appropriate dollar figure for the award. *Lorillard Tobacco Co.,* 2004 U.S. Dist. LEXIS 22563, at *16.

In addition, courts have awarded significant damage amounts where a defendant's counterfeiting activities attracted wide market exposure through Internet traffic or advertisement. *See Coach, Inc. v. Ocean Point Gifts*, 2010 U.S. Dist. LEXIS 59003, at *15-16 (D.N.J. Jun. 14, 2010) (significant damage awards in counterfeit cases were "due in part to the wide market exposure that the Internet can provide"); *Burberry Ltd. v. Designers Imports, Inc.*, 2010 U.S. Dist. LEXIS 3605, at *28-29 (S.D.N.Y. Jan. 19, 2010) (damages amount based, in part, on "Defendant's ability to reach a vast customer base through internet advertising").

In similar cases involving willful Internet-based counterfeiting, courts have awarded statutory damages, including up to the maximum provided by law, to the plaintiff to serve the purposes of: (1) deterring the defendant and others situated like him from bringing into commerce counterfeit goods, (2) compensating the plaintiff for damages caused by defendant's infringement, and (3) punishing the defendant appropriately for his counterfeiting activities. *See, e.g.*, *Burberry Limited, et al. v. XIE JI PING, et al.*, No. 18-cv-07442 (N.D. Ill. Jan. 15, 2019) (unpublished) (Docket Nos. 42 and 43) (awarding $1,000,000 in statutory damages per defendant); *NBA Properties, Inc., et al. v. YU ZICHENG, et al.*, 19-cv-04412 (N.D. Ill. Oct. 8, 2019) (unpublished) (Docket Nos. 60 and 61) (awarding $500,000 in statutory damages per defendant); *H-D U.S.A., LLC v. DLLL, et al.*, No. 19-cv-07629 (N.D. Ill. Feb. 18, 2020) (unpublished) (Docket Nos. 64 and 65) (same). Given the Court's clear discretion in determining the appropriate amount of the statutory damages award within the statutory limits of 15 U.S.C. § 1117(c), and the facts specific

to this case, Plaintiff respectfully requests the Court's entry of an award of fifty thousand dollars ($50,000) per Defaulting Defendant.

i. Defaulting Defendants' Willful Counterfeiting Supports the Requested Award

Defaulting Defendants' counterfeiting was willful and, therefore, at a minimum, warrants the requested statutory damages award. "Willful infringement may be attributed to the defendant's actions where he had knowledge that his conduct constituted infringement or where he showed a reckless disregard for the owner's rights." *Lorillard Tobacco Co. v. S & M Cent. Serv. Corp.*, 2004 LEXIS 22563, at *19-20 (N.D. Ill. Feb. 25, 2005). Knowledge need not be proven directly, but can be inferred from a defendant's conduct. *Id.* at *20. As alleged in Plaintiff's Complaint, Defaulting Defendants facilitated sales by designing the e-commerce stores so that they appeared to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. [1] at ¶ 18. As such, Defaulting Defendants clearly had knowledge that their activities constituted infringement or at least a reckless disregard for Plaintiff's rights in the CHRISTIAN DIOR Trademarks. [1] at ¶¶ 18-25; *see also* **Exhibit 2**. Finally, District Courts have deemed counterfeiting willful when defendants default. *See Burberry Limited, et al. v. The P'ships, et al.*, No. 14-cv-08220 (N.D. Ill. Dec. 11, 2014) (unpublished) (Docket Nos. 44 and 45); *Oakley, Inc. v. The P'ships, et al.*, No. 13-cv-02958 (N.D. Ill. June 17, 2013) (unpublished) (Docket Nos. 36 and 37).

ii. The Value of the CHRISTIAN DIOR Trademarks and Plaintiff's Efforts to Promote, Protect, and Enhance Plaintiff's Brand Justify the Requested Award

In determining an appropriate statutory damage award, this Court should be guided by the *Lorillard* case and consider the "significant value of [the brand] and the efforts taken to protect, promote and enhance [that brand]." *Lorillard Tobacco Co.*, 2004 U.S. Dist. LEXIS 22563, at *16. Plaintiff has expended substantial time, money, and other resources in developing, advertising and

otherwise promoting the CHRISTIAN DIOR Trademarks. [17] at ¶ 10. Thus, the requested statutory damages award should be given favorable consideration in view of the value of Plaintiff's brand and the extensive steps being taken by Plaintiff to protect, promote and enhance it. *See Monster Energy Company*, 2015 U.S. Dist. LEXIS 86956, at *11; *Luxottica USA LLC v. The P'ships, et al.*, 2015 U.S. Dist. LEXIS 78961, at *7-8 (N.D. Ill. June 18, 2015).

iii. <u>Defaulting Defendant's Wide Exposure over the Internet Merits the Requested Award</u>

Defendants who operate online attract wide market exposure through Internet traffic and/or advertisement. Defaulting Defendants' wide market exposure over the Internet warrants the requested statutory damages award. *See H-D U.S.A., LLC v. Guangzhou Tomas Crafts Co., et al.*, 2017 U.S. Dist. LEXIS 207613 (N.D. Ill. Dec. 18, 2017) (awarding $150,000 in statutory damages, noting "the fact that defendant's counterfeiting took place online favors a higher statutory damages award because online counterfeiting can reach a much wider audience than counterfeiting through a physical store."); *Luxottica USA LLC v. The P'ships, et al.*, 2017 U.S. Dist. LEXIS 29999, at *11-12 (Mar. 2, 2017 N.D. Ill.) (summary judgment and awarding $100,000 in statutory damages "because [defendant] advertised [counterfeit goods] on the internet, allowing for distribution far greater than if it sold the hats in a brick-and-mortar store.").

iv. <u>The Requested Statutory Damages Award Must Sufficiently Deter Defaulting Defendants and Similar Online Counterfeit Sellers</u>

The remedy imposed must provide a sufficient deterrent effect to ensure that the guilty party will not engage in further infringing conduct. *Sands, Taylor & Wood v. Quaker Oats Co.*, 34 F.3d 1340, 1348 (7th Cir. 1994). In *Phillip Morris USA Inc. v. Marlboro Express*, the Court stated that due to "the size of the potential profit given the quantities of [counterfeit goods] involved, and the need for a substantial deterrent to future misconduct by defendants and other counterfeit traffickers . . . plaintiff is entitled to the maximum statutory award under 15 U.S.C. § 1117(c)(2)."

2005 U.S. Dist. LEXIS 40359, at *28 (E.D.N.Y. Aug. 26, 2005); *see also Luxottica USA LLC v. The P'ships, et al.*, 2015 U.S. Dist. LEXIS 78961, at *8.

To reach global consumers, counterfeiters advertise, offer for sale, and sell their products via social media platforms and popular e-commerce sites. At last count, global trade in counterfeit and pirated goods was worth an estimated $467 billion per year — accounting for a staggering 2.3% of all imports, according to the Organization for Economic Cooperation and Development (the "OECD"). [16] at ¶ 3. The primary source of all those counterfeits, the OECD and others say, is China. *Id.* Additionally, a February 2017 report commissioned by Business Action to Stop Counterfeiting and Piracy (BASCAP) and the International Trademark Association (INTA) titled *The Economic Impacts of Counterfeiting and Piracy* included findings that counterfeit and pirated products account for billions in economic losses, resulting in tens of thousands of lost jobs. *Id.* at ¶ 4. The requested statutory damages award is necessary to deter both Defaulting Defendants and other similarly situated online sellers.

## V. PLAINTIFF IS ENTITLED TO PERMANENT INJUNCTIVE RELIEF

In addition to the foregoing relief, Plaintiff respectfully requests entry of a permanent injunction enjoining Defaulting Defendants from infringing or otherwise violating Plaintiff's rights in the federally registered CHRISTIAN DIOR Trademarks, including at least all injunctive relief previously awarded by this Court to Plaintiff in the TRO. Plaintiff is also entitled to injunctive relief so it can quickly take action against any new e-commerce stores selling Counterfeit Dior Products that are found to be linked to Defaulting Defendants. *See Burberry Limited, et al. v. The P'ships, et al.*, No. 14-cv-08220 (N.D. Ill. Dec. 11, 2014) (unpublished) (Docket Nos. 44 and 45); *Oakley, Inc. v. The P'ships, et al.*, No. 13-cv-02958 (N.D. Ill. June 17, 2013) (unpublished) (Docket Nos. 36 and 37).

## CONCLUSION

Plaintiff respectfully requests that the Court enter default and default judgment against each Defaulting Defendant, award statutory damages in the amount of $50,000 per Defaulting Defendant pursuant to 15 U.S.C. § 1117(c), and enter a permanent injunction order prohibiting Defaulting Defendants from selling Counterfeit Dior Products and transferring all assets in Defaulting Defendants' financial accounts to Plaintiff.

Dated this 19th day of August 2026.

Respectfully submitted,

/s/ Jennifer V. Nacht
Amy C. Ziegler
Justin R. Gaudio
Jennifer V. Nacht
Hannah A. Abes
Greer, Burns & Crain, Ltd.
200 West Madison Street, Suite 2100
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
jnacht@gbc.law
habes@gbc.law

*Counsel for Plaintiff Christian Dior Couture, S.A.*